UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA BLACKMORE JENKINS, }<br>}<br>}<br>Plaintiff, }<br>}<br>v. }<br>}<br>SECURITY ENGINEERS, INC., }<br>}<br>Defendant. } | Case No.: 2:18-cv-00309-ACA |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination action. The case is before the court on defendant Security Engineers, Inc.'s motion to dismiss *pro se* plaintiff Pamela Blackmore-Jenkins's amended complaint and motion for a more definite statement. (Doc. 12). Security Engineers asks the court to dismiss Ms. Blackmore-Jenkins's OSHA retaliation claim. Security Engineers asks the court to require Ms. Blackmore-Jenkins to re-plead her remaining claims.

Ms. Blackmore-Jenkins responded to the motion. (Doc. 14). She contends that pursuant to Rule 8 of the Federal Rules of Civil Procedure, her amended complaint provides a short and plain statement that puts Security Engineers on notice of the claims that she asserts her former employer.

For the reasons explained below, the Court finds that Security Engineers's motion is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. A complaint need not contain detailed factual allegations, but a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When resolving a motion to dismiss, the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the

plaintiff." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam)). Although the court must accept well-pleaded facts as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

When, as here, a plaintiff proceeds *pro se*, the court must liberally construe the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Still, the court may not "serve as *de facto* counsel for a party, or . . . rewrite an otherwise deficient pleading" to "sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (internal quotations and citations omitted). In other words, "[o]nce a *pro se* litigant is in court, [s]he is subject to the relevant laws and rules of court, including the Federal Rules of Civil Procedure." *Smith v. Fla. Dept. of Corr.*, 369 F. App'x. 36, 38 (11th Cir. 2010) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)).

## II. FACTUAL ALLEGATIONS

Ms. Blackmore-Jenkins is over 40-years old. (Doc. 11, p. 3). She started working for Security Engineers in July 2015, and at an unspecified time, Security Engineers terminated her employment. (Doc. 11, p. 1, ¶ 3; Doc. 11, p. 9).

While she was employed, Ms. Blackmore-Jenkins filed a complaint with Security Engineers in which she stated that other employees sexually harassed her. Specifically, Ms. Blackmore-Jenkins "made complaints of sexual comments, visual displays, actions of sexual intimidation and physical touching in a secluded room." (Doc. 11, p. 2, ¶ 4). According to Ms. Blackmore-Jenkins, one month after she filed her complaint, a co-worker pushed Ms. Blackmore-Jenkins "against the ladies bathroom door, pressing her body and breast firmly against" Ms. Blackmore-Jenkins. (Doc. 11, p. 2, ¶ 5). Ms. Blackmore-Jenkins "immediately wrote a letter to Human Resources." (Doc. 11, p. 2, ¶ 5).

In her amended complaint, Ms. Blackmore-Jenkins alleges that one month after she wrote the letter to human resources:

> Captain Adams Jenkins was working Patrol. Captain Jenkins was lingering in the dispatch office more than usual. I was sitting with my back facing the copier, the phone was to my left. Captain Jenkins stood behind my office chair. Moving and pressing against the chair, caused the chair to swivel to the left. I slid the chair forward to give him some room and get him off of the chair. With my glasses on, I dropped my head forward, to pretend I was reading. He used the dispatch phone to make a call. He continued to stand behind the chair while talking and consistently rotating and moving the chair. He rotated the chair to rub his pelvic area with an erected penis against my arm. I forcefully slid my chair forward. He slid the chair back toward his and he said, "You Alright." As if there was enough space

between the two of us. As he was proceeding to leave, he stated, "Stay awake now." I wrote the complaint and slid it under Mims door, Joel's door and placed it under some papers on Marvin's desk.

(Doc. 11, p. 2, ¶ 6).

Ms. Blackmore-Jenkins also contends that:

Joel Morris, Director of Operations was at work on the late shift. Marvin Wells was working in dispatch and a Captain was in the building. He asked to speak to me in the conference room in regards to the note I left in Human Resources to be submitted to Dan Bottoms. He yelled, "He didn't give a f[***] what I recorded.["] He asked, "How much do we owe you? Then he stated, what do we you about $35,000.00, I can give you a check right now.["] After comments back and forth I walked out, to go back to the dispatch office. I stepped in the office to talk and listen. He closed the door and turned off the light. Immediately, he grabbed me and I stood there and said, to him. "Let me go, If you don't believe me I can f[******] handle my on [sic]." He released me and open[ed] the door. I walked back into the dispatch office and he told me to go home.

(Doc. 11, p. 2, ¶ 7).

Ms. Blackmore-Jenkins alleges that Security Engineers did not respond to her complaints of harassment. (Doc. 11, p. 2, ¶ 9). Instead, according to Ms. Blackmore-Jenkins, after she complained about sexual harassment, Security Engineers reduced her pay and opportunities to earn overtime. (Doc. 11, p. 6, ¶ 10). Security Engineers also posted a picture of Ms. Blackmore-Jenkins in the office, and employees made gestures toward the picture "as they laughed and joked." (Doc. 11, p. 7, ¶ 16).

5

In addition to sexual harassment, Ms. Blackmore-Jenkins complained about age discrimination and harassment. (Doc. 11, p. 3, ¶ 6). Before Security Engineers terminated her employment, Ms. Blackmore-Jenkins filed a complaint in which she stated that Security Engineers treated a similarly-situated employee, Erika Robertson, more favorably than the company treated her. Ms. Blackmore-Jenkins's complaints included, but were not limited to Ms. Robertson's tardiness, cell phone use, long lunch breaks, and work performance. (Doc. 11, p. 3). In her amended complaint, Ms. Blackmore-Jenkins alleges that "Erika Robertson has falsified her hours and time and made several threats directed and written to Pamela Blackmore Jenkins. She was not equally disciplined nor was she disciplined at all, when compared to Pamela Blackmore Jenkins, for her actions. . . ." (Doc. 11, p. 3). According to Ms. Blackmore-Jenkins, after her termination, Security Engineers replaced her with two employees who are under the age of 40. (Doc. 11, pp. 3-5).

Ms. Blackmore-Jenkins also complained about not being paid for working hours at different sites and not being paid overtime. (Doc. 11, p. 8, ¶ 1). According to Ms. Blackmore-Jenkins, Security Engineers "did not put in [her] hours worked at each location," and the company "did not pay overtime for hours worked." (Doc. 11, p. 8, ¶ 1).

In addition, Ms. Blackmore-Jenkins alleges that she filed a complaint with the Occupational Safety and Health Administration (OSHA) in which she voiced "safety concerns regarding patrol vehicles, general safety concerns, reporting a female (co-worker) that created a hostile work environment and reporting an employee for operating a vehicle under the influence of alcohol/illegal drug use." (Doc. 11, p. 9, ¶ 2). Ms. Blackmore-Jenkins also complained about "operating vehicles without proper maintenance" which "caused several accidents injuring employees." (Doc. 11, p. 9). After Ms. Blackmore-Jenkins filed complaints with OSHA, she claims that Security Engineers demoted her from dispatcher to security officer and then terminated her employment with the company. (Doc. 11, p. 9).

Based on these allegations, Ms. Blackmore-Jenkins asserts five claims against Security Engineers: (1) Title VII sexual harassment; (2) ADEA age discrimination; (3) Title VII hostile work environment and retaliation; (4) FLSA wage and hour violations; and (5) OSHA retaliation.

## III. ANALYSIS

### A. OSHA Retaliation

In count five of her amended complaint, Ms. Blackmore-Jenkins alleges that Security Engineers retaliated against her after she reported unsafe working conditions to OSHA. Ms. Blackmore-Jenkins's OSHA retaliation claim fails to state a claim because OSHA affords her no private right of action.

7

OSHA prohibits an employer from discriminating or retaliating against employees who file OSHA complaints. *See* 29 U.S.C. § 660(c)(1) ("No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter."). But, according to the statute, only the Secretary of Labor is authorized to bring suit on behalf of an employee who claims that an employer has retaliated against her for exercising her rights under OSHA. 29 U.S.C. § 660(c)(2) provides:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

29 U.S.C. § 660(c)(2).

In a case that is binding on this court, the former Fifth Circuit Court of Appeals stated that "[n]owhere in the language of the Act, its legislative history, or

in the statutory declaration of purpose and policy in the Act itself is there the slightest implication that Congress considered OSHA creating a private right of action for violation of its terms." *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976 (5th Cir. 1975).[1] This position is consistent with other courts that have considered the issue. *See e.g., Donovan v. Occupational Safety and Health Review Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) ("[E]mployees have a limited role in the enforcement of the Act. Under OSHA, employees do not have a private right of action."); *Solis v. Blue Bird Corp.*, 404 F. App'x. 412, 413, n.1 (11th Cir. 2010) ("This action was initiated and litigated by the Secretary of Labor on behalf of [the former employee] in accordance with the provisions of 29 U.S.C. § 660(c)(2)."); *Perez v. Renaissance Arts and Educ., Inc.*, 2013 WL 5487097, at *1 (M.D. Fla. 2013) ("There is no private right of action under federal law for a private employer's retaliatory discharge under OSHA.") (citing *George v. Aztec Rental Ctr., Inc.*, 763 F.2d 184, 186 (5th Cir. 1985)).

Accordingly, the court does hereby **DISMISS** Ms. Blackmore-Jenkins's OSHA retaliation claim.

**B.** **Remaining Claims**

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Security Engineers argues that the court should require Ms. Blackmore-Jenkins to re-plead her remaining claims because according to Security Engineers, the amended complaint does not comply with Rules 8 and 10(b) of the Federal Rules of Civil Procedure. Given the liberal standard that applies to *pro se* pleadings and the nature of the factual allegations that Ms. Blackmore-Jenkins has provided in the amended complaint, the court disagrees.

Security Engineers is correct that Ms. Blackmore-Jenkins's amended complaint does not comply in every respect with Rule 10(b)'s instruction that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). For instance, the first two pages of the amended complaint contain separately numbered paragraphs in chronological order. (Doc. 11, pp. 1-2). The remaining pages of the amended complaint contain factual allegations under various headings and some numbered paragraphs that do not appear to follow a consistent format or order. (Doc. 11, pp. 3-10). Nevertheless, the court finds that Ms. Blackmore-Jenkins has satisfied the federal pleading standard to provide "a short and plain statement" of the claims that she asserts against Security Engineers. The claims are clearly labeled. (Doc. 11, p. 1 ("Sexual Harassment"); Doc. 11, p. 3 ("The Age Discrimination in Employment Act"); Doc. 11, p. 6 ("Harassment including Hostile Work Environment and retaliation"); Doc. 11, p. 8 ("FLSA Hours and

Wage")). And Ms. Blackmore-Jenkins provides sufficient facts—and in many instances detailed facts—to support each claim. Thus, the court finds that Ms. Blackmore-Jenkins's amended complaint is not "so vague or ambiguous" that Security Engineers "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). In addition, the court finds that the amended complaint sufficiently states claims for Title VII sexual harassment, ADEA age discrimination, Title VII hostile work environment and retaliation, and FLSA wage and hour violations.

Accordingly, the court **DENIES** Security Engineers's motion for a more definite statement.

## IV. CONCLUSION

For the reasons stated above, the court **GRANTS IN PART AND DENIES IN PART** Security Engineers's motion to dismiss and motion for a more definite statement. (Doc. 12).

The Court **DISMISSES WITH PREJUDICE** Ms. Blackmore-Jenkins's OSHA retaliation claim.

Ms. Blackmore-Jenkins's Title VII sexual harassment, ADEA age discrimination, Title VII hostile work environment and retaliation, and FLSA wage and hour claims state plausible claims for relief and will proceed.

**Within 14 days of entry of this order**, Security Engineers shall file an answer to the amended complaint.

Unless instructed otherwise by this court, the parties shall conduct discovery consistent with the May 9, 2018 scheduling order. (Doc. 10).

**DONE** and **ORDERED** this June 27, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE